UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROY ALLEN CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:22-cv-00247 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| TENNESSEE DEPARTMENT OF ) | |
| CHILDREN'S SERVICES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Roy Allen Carter brings this pro se action under 42 U.S.C. § 1983, alleging violations of his civil rights. (Doc. No. 1). Pending before the Court are six filings by Plaintiff: (1) Plaintiff's Motion to Lift Stay (Doc. No. 108); (2) Motion for Emergency Temporary Restraining Order ["TRO"] and Preliminary Injunction ("TRO Motion") (Doc. No. 110); (3) Notice of Request for Remote Hearing (Doc. No. 124); (4) Plaintiff's Motion for Leave to Exceed Page Limit for Reply ("Motion for Leave") (Doc. No. 126); (5) Notice of Emergency and Request for Ruling on Motion to Lift Stay and Emergency Motion for TRO/Preliminary Injunction ("Notice of Emergency and Request for Ruling") (Doc. No. 130); and (6) Emergency Motion to Expedite Ruling and to Stay Adoption Pending Disposition of Federal Motions ("Emergency Motion") (Doc. No. 131).

In Plaintiff's Notice of Emergency and Request for Ruling (Doc. No. 130), Plaintiff requests that this Court rule on Plaintiff's pending motions, specifically Plaintiff's Motion to Lift Stay (Doc. No. 108) and Plaintiff's TRO Motion (Doc. No. 110). Plaintiff's Notice of Emergency and Request for Ruling (Doc. No. 130) is **GRANTED**.

Insofar as Plaintiff's Emergency Motion (Doc. No. 131) duplicates the request from Doc. No. 130 that this Court expedite the ruling on the same filings, Plaintiff's Emergency Motion is **GRANTED IN PART**.[1]

For the reasons set forth below, the remainder of Plaintiff's Emergency Motion is **DENIED IN PART**. (Doc. No. 131). Plaintiff's Motion to Lift Stay (Doc. No. 108) and Plaintiff's TRO Motion (Doc. No. 110) are **DENIED WITHOUT PREJUDICE**. Plaintiff's Notice of Request for Remote Hearing (Doc. No. 124) and Plaintiff's Motion for Leave (Doc. No. 126) are **DENIED AS MOOT**. In sum, the status of the instant case remains unchanged.

## I. BACKGROUND

This case arises out of an investigation by Tennessee Department of Children's Services ("DCS"), which led to the removal of Plaintiff's children and the placement of them into state custody. (Doc. No. 1 at PageID# 9-10). DCS's Petition for Removal cited nutritional neglect, drug use, and domestic violence on the part of Plaintiff. (*Id*. at PageID# 9).

Plaintiff filed suit against DCS, DCS employees, and the foster mother for his children. (*Id.* at PageID# 4-7). The remaining Defendants include the guardian ad litem for his children, three lawyers who were appointed to represent him during the underlying juvenile court dependency-and-neglect and termination-of-parental-rights proceedings, the juvenile court judge assigned to preside over the underlying proceedings, and the Cannon County Juvenile Court itself. (*Id.*). Plaintiff asserts claims under 42 U.S.C. § 1983, alleging several constitutional violations in connection with the investigation and underlying state-court proceedings. (Doc. No. 1).

---

[1] The Court's ruling as to the remainder of Plaintiff's Emergency Motion (Doc. No. 131) is addressed in Section V. below.

As discussed below, there is at least one pending state-court proceeding related to this matter, which is in the Tennessee Court of Appeals. The Court takes judicial notice of said matter, Case No. M2024-00097-COA-R3-PT, and takes judicial notice of the fact that that appellate proceeding is ongoing.

## II. MOTION TO LIFT STAY

On February 15, 2023, this Court entered an order staying the instant case "pending the resolution of the related state-court proceedings," and indicating the case may be re-opened upon the resolution of the state-court proceedings, if appropriate at that time. (Doc. No. 101 at PageID# 475).

In Plaintiff's Motion to Lift Stay (Doc. No. 108), Plaintiff asks this Court to lift the stay issued on February 15, 2023 (Doc. No. 101) and resume proceedings, stating he "uncovered and documented substantial new evidence—including fraud, procedural misconduct, forgery, retaliatory interference, and unconstitutional denials of access to court—some of which postdates the federal stay and was not available at the time of the Complaint." (Doc. No. 108 at PageID# 704). Plaintiff insists that he has exhausted all remedies available to him in the state courts. (*Id.*).

Defendants Meredith Rambo, DCS, Jennifer Adams, Julie Brown, Carolyn Jennings, Katherine Reed McConnell, and Joshua T. Crain filed responses in opposition to Plaintiff's Motion to Lift Stay, arguing that the appellate proceedings related to the underlying juvenile court case are currently pending. (Doc. Nos. 115, 116, 119).

The Court's own research shows that Plaintiff has an open case in the Tennessee Court of Appeals regarding the same state-court proceedings at issue in the instant case. Plaintiff's appeal was filed in January of 2024, and the parties submitted the case after oral argument on May 1, 2025. (Doc. 115-1 at PageID# 778). A case administrator at the Tennessee Court of Appeals has

confirmed that an opinion was issued in Plaintiff's case on July 18, 2025, and the parties have up to 60 days to appeal the decision to the Tennessee Supreme Court. Thus, Plaintiff's state-court proceedings have not yet concluded.

Accordingly, Plaintiff's Motion to Lift Stay (Doc. No. 108) is **DENIED WITHOUT PREJUDICE**. Plaintiff may file a similar motion following the exhaustion of state-court remedies and the termination of the state-court proceedings, if appropriate.

### III. REQUEST FOR TEMPORARY RESTRAINING ORDER

In Plaintiff's TRO Motion (Doc. No. 110) and Plaintiff's Memorandum of Law in Support of Motion to Lift Stay and Motion for Emergency Temporary Restraining Order and Preliminary Injunction ("TRO Memorandum") (Doc No. 111), Plaintiff asks this Court to grant TRO to "preserve the status quo, prevent irreparable harm, and safeguard Plaintiff's federal constitutional rights . . . based on newly uncovered evidence of fraud, obstruction, and due process violations . . . ." (Doc. No. 110 at PageID# 735).

Plaintiff asks this Court to lift the stay imposed on February 15, 2023 (Doc. No. 101)[2]; enjoin DCS and Cannon County Juvenile Court from enforcing or relying on any orders arising from Plaintiff's juvenile case; halt the adoption and permanent placement actions regarding Plaintiff's children based on the current order terminating his parental rights; stop the retaliatory and procedural obstruction; enjoin Defendants from denying Plaintiff reasonable visitation and communication with his minor children and order visitation be maintained; schedule an expedited hearing and issue a preliminary injunction maintaining said relief during the pendency of the instant case; waive any requirement of bond or security under Federal Rule of Civil Procedure 65(c); and grant any additional or alternative relief as this Court deems just and necessary. (*Id*. at

---

[2] This request has been denied for the reasons set forth above in Section II.

PageID# 737-38). Plaintiff also requests this case be referred to the United States Attorney's Office and/or the United States Department of Justice for investigation. (Doc. No. 110 at PageID# 738-39; Doc. No. 111 at PageID# 760-61).

Defendants Meredith Rambo, Jennifer Adams, Julie Brown, Carolyn Jennings, Katherine Reed McConnell, DCS, and Joshua T. Crain filed responses in opposition, all arguing substantively as to the TRO Motion. (Doc. Nos. 114, 116, 119). Defendants do not, however, mention the procedural deficiencies of Plaintiff's TRO Motion. (*Id.*).

In this district, a movant seeking a temporary restraining order must comply with specific procedural requirements. First, "any request for a TRO" must be made by written motion "separate from the complaint." M.D. Tenn. L.R. 65.01(a). Second, because the movant bears the burden of "proving the circumstances clearly demand [the granting of a TRO]," *Shelby Cnty. Advocs. for Valid Elections v. Hargett,* 348 F. Supp. 3d 764, 768-69 (W.D. Tenn. 2018), a TRO motion must be accompanied by a memorandum of law. M.D. Tenn. L.R. 65.01(b). Third, the motion for a TRO must be supported, at a minimum, by "an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A); M.D. Tenn. L.R. 65.01(b) (explaining that a motion for a TRO "must be accompanied by a separately filed affidavit or verified written complaint"). Finally, the moving party must certify in writing "any efforts made to give notice and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B); *see also* M.D. Tenn. L.R. 65.01(c) (requiring "strict compliance" with this notice provision by pro se moving parties).

Plaintiff's TRO Motion is supported neither by an affidavit nor a verified complaint.[3] Additionally, Plaintiff has not carried his burden to show that he provided notice and the "reasons

---

[3] Plaintiff has filed multiple documents, some with attachments thereto, related to Plaintiff's TRO. (Doc. Nos. 111, 121, 128, 129, 130). The Court has reviewed said documents, and there is no indication that any of the documents operate as an affidavit or verified complaint. Furthermore,

why [notice] should not be required" as mandated by Rule 65(b)(1)(B). *See Lane v. Pennymac Loan Servs., LLC*, No. 1:24-cv-1227-STA-jay, 2024 WL 5411524, at *6 (W.D. Tenn. Dec. 17, 2024) (denying TRO motion without prejudice because plaintiff had failed to certify in writing any efforts to give notice or the reasons why notice should not be required). That burden applies equally to pro se plaintiffs and represented parties' counsel. *See Harcrow v. Harcrow*, No. 3:18-cv-00828, 2018 WL 5112532, at *3 (M.D. Tenn. Oct. 19, 2018) (citing *Turner v. Clelland*, No. 1:15CV947, 2016 WL 1069665, at *3 (M.D.N.C. Mar. 16, 2016) (collecting cases); *Valladares v. Nationstar Mortg. LLC*, No. CV 15-8514-GW(GPSX), 2015 WL 12866245, at *3 (C.D. Cal. Nov. 5, 2015)).

Accordingly, Plaintiff's TRO Motion (Doc. No. 110) is **DENIED WITHOUT PREJUDICE**.

## IV. REQUEST FOR PRELIMINARY INJUNCTION

Via the TRO Motion, Plaintiff also seeks a preliminary injunction that requests the same above-described relief that she requested in connection with the request for a TRO. (Doc. No. 110). For the reasons set forth below, Plaintiff's request for a preliminary injunction (Doc. No. 110) is **DENIED WITHOUT PREJUDICE**.

A. GOVERNING LAW

Those seeking a preliminary injunction must meet four requirements.[4] Specifically, they must show a likelihood of success on the merits; irreparable harm in the absence of the injunction;

---

none of the documents indicate any efforts made to give notice to Defendants or why notice should not be required. (*Id*.).

[4] Published Sixth Circuit case law stands unmistakably for the proposition that these four items are factors rather than requirements, except that irreparable harm is a requirement (and, if it exists and thus keeps the possibility of a TRO alive, thereafter becomes a factor to be balanced along with the other three factors). *See, e.g., D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019). Alas, this case law is inconsistent with other (including more recent) Sixth Circuit case

the balance of equities favors them; and that public interest favors an injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 403 (6th Cir. 2022).

B. ALLEGED FACTS

In Plaintiff's TRO Memorandum, Plaintiff states his children were removed from his custody and control following the children being evaluated at a hospital, which led to DCS filing petitions asking to take Plaintiff's children into protective custody. (Doc. No. 111 at PageID# 752-

---

law and with Supreme Court cases (including *Winter*) that describe these as all being requirements (i.e., things that *must* be established. *See, e.g., id.* at 328, 329 (Nabaldian, J., concurring) (noting that "[*Winter*]'s language seems clear—a plaintiff *must* establish the factors" and questioning "whether the balancing analysis itself aligns with *Winter*.").

Notably, other courts have likewise treated the four items as requirements (prerequisites), rather than as factors. *E.g., Southern Poverty Law Ctr. V. United States Dep't Homeland Sec.*, Civil Action No. 18-760 (CKK), 2020 WL 3265533, *10 (D.D.C. June 17, 2020); *Transatlantic, LLC v. Humana, Inc.*, 8:13–CV– 1925–T–17TBM, 2013 WL 3958361, *1 (M.D. Fla. Aug. 1, 2013).

The Court believes that it needs to choose between the two approaches—even if the substance or the outcome of the Motion does not turn on such choice—because the approach does dictate how a court goes about explaining its analysis and decision on a motion for preliminary injunction. And the Court believes that it should follow the latter line of cases, i.e., those that treat the standard as involving requirements rather than factors.

First, explaining and applying the standard in terms of requirements is substantially more straightforward than the alternative—which is to explain that the four items are factors to be balanced, except that, well, that's only partially true because actually irreparable harm *is* a requirement (but also, if it exists, *then* a factor to be balanced along with the other factors) and likelihood of success (at least to some minimal extent) is also required. *D.T. v. Sumner Cnty. Sch.*, 942 F.3d at 326–27 ("Thus, although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory."); *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (noting that it is reversible error for a district court to issue a preliminary injunction "where there is simply no likelihood of success on the merits." (quoting *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010))).

Second, it easier to articulate a conclusion as to whether requirements are satisfied (which is done in simple yes/no, or satisfied/unsatisfied, terms) than to articulate the outcome of some so-called "balancing" of (mismatched) factors. This is especially true given that case-specific balancing apparently is based in part on some inscrutable sliding scale of required likelihood of success on the merits that depends on the strength of the other three factors. *See, e.g., In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985) ("[T]he degree of likelihood of success required may depend on the strength of the other factors.").

53). Plaintiff challenges the validity of "forged" documents as they allegedly "bore a falsified 'FILED' stamp . . . ," contained various inaccuracies and statements, and were accepted and filed by state court personnel despite knowledge of such. (*Id*. at PageID# 753). Plaintiff further challenges the medical records and other discovery of which the state court relied upon. (*Id*. at PageID# 754).

Plaintiff alleges that the preliminary hearing required by Tenn. Code Ann. § 37-1-117(c), addressing whether probable caused existed as to the necessity of the removal of his children, was not held but instead waived by his court-appointed attorney, Defendant Tammy Womack. (Doc. No. 111 at PageID# 753). The case then incorrectly proceeded, according to Plaintiff, as though the state court made a probable cause finding despite no preliminary hearing being held. (*Id*.). Plaintiff argues this violated state law and his right to due process. (*Id*.).

Plaintiff further alleges that Defendant Susan Melton failed to ever adjudicate the legality of his children's removal from his care, thereby violating his right to due process, and Plaintiff, as a result, calls into question the later termination-of-parental-rights proceedings. (Doc. No. 111 at PageID# 753-54). Plaintiff states that the termination-of-parental-rights proceedings were conducted in his absence, violating his Due Process and Equal Protection rights. (*Id*.).

Plaintiff alleges retaliation and record tampering by the Cannon County Clerk's Office[5] by rejecting filings; signing for, opening, resealing, and returning certified mail; and requiring Plaintiff to file documents only after seeking permission from the county attorney. (Doc. No. 111 at PageID# 754). Plaintiff filed a "Rule 24(e) objection" with the Tennessee Court of Appeals. (*Id*. at PageID# 755). Plaintiff challenges the decision of the Tennessee Court of Appeals as to that filing and states the Tennessee Supreme Court denied "Plaintiff's Rule 10 extraordinary appeal

---

[5] The Cannon County Clerk's Office is not a named defendant.

without opinion." (*Id.*). Plaintiff insists that "no adequate forum exists for constitutional review," thereby "satisfying the third *Younger* exception . . . ." (*Id.*).

C. ANALYSIS

Among Plaintiff's requests are that this Court enjoin the enforcement of the relevant state-court orders, stay the adoption and permanent placement actions, enjoin Defendants from denying Plaintiff visitation or communication with his children, and order said visitation to continue while federal proceedings continue. In so requesting, Plaintiff is asking the Court to do, in essence, the very thing from which it previously has abstained pursuant to *Younger v. Harris*, 401 U.S. 37 (1971): to interfere with state child-custody and permanency orders. (Doc. No. 101).

Plaintiff has not provided the Court with sufficient information refuting that (1) there are ongoing state judicial proceedings; (2) those proceedings implicate important state interests; and (3) he has an adequate opportunity in the state proceedings to raise his constitutional challenges. *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (identifying these three things as the three requirements for *Younger* abstention). The Court has already determined that there are pending state-court proceedings as explained above. For this reason, it is not necessary for the Court to consider the second and third requirements laid out in *O'Neill*.

Because Plaintiff has 60 days from the date of the Tennessee Court of Appeal's judgment to appeal his case to the Tennessee Supreme Court, the state-court proceedings are indeed ongoing. Plaintiff has therefore not "exhausted all his state appellate remedies." *See Moncier v. Jones*, 803 F. Supp. 2d 815, 833 (E.D. Tenn. 2011) (internal quotation marks omitted); *Williams v. Lubin*, 516 F. Supp. 2d 535, 539 (D. Md. 2007) ("[A] state proceeding is ongoing for purposes of Younger until state appellate review is completed.").

Consequently, the Court will abstain as to the above-specified relief pursuant to *Younger* and for the same reasons as explained in the Court's Memorandum Opinion and Order (Doc. No. 101).

Plaintiff also requests that this Court enjoin Defendants from restricting Plaintiff's access to "court records, filings, or judicial review, including through the refusal of certified mailings, exclusion of pro se submissions, or other retaliatory conduct;" waive any potential bond requirement under Federal Rule of Civil Procedure 65(c); lift the *Younger* stay imposed on February 15, 2023 (Doc. No. 101) and place this case in active status; refer the allegations of forgery, fraud, and official misconduct to the United States Department of Justice or the United States Attorney's Office for the Middle District of Tennessee; and set an expedited hearing date on this motion. The Court declines such requests because Plaintiff has not satisfied all four requirements for obtaining a preliminary injunction.

Specifically, because Plaintiff has not yet exhausted all state-court remedies, he fails at least to satisfy the requirement that he is likely to suffer irreparable harm without an injunction. It cannot be said that there is an existence of an irreparable injury at this time, because Plaintiff has the option to pursue his claims in the Tennessee Supreme Court. *See Gonnella v. Johnson*, 115 F. App'x 770, 771 (6th Cir. 2004) (affirming district court's order abstaining pursuant to *Younger* and deciding there was no irreparable harm to Plaintiff because state-court proceedings were ongoing).

Because this requirement has not been (and cannot at this time be) established by Plaintiff, it is not necessary for the Court to consider the other three requirements. "This conclusion is dispositive here because 'a district court is "well within its province" when it denies a preliminary injunction based solely on the lack of an irreparable injury.'" *Netchoice v. Skrmetti*, No. 3:24-CV-

01191, 2025 WL 1710228, at *14 (M.D. Tenn. June 18, 2025) (quoting *D.T.*, 942 F.3d at 327). This remains so even if Plaintiff's claims could ultimately prove meritorious, but for the reasons stated above, the Court will not opine on that factor. *Netchoice*, 2025 WL 1710228, at *14.

Plaintiff's request for a preliminary injunction (Doc. No. 110) is **DENIED WITHOUT PREJUDICE**. Because Plaintiff's TRO Motion (including its both its request for a TRO and its request for a preliminary injunction) is hereby denied in its entirety, Plaintiff's Notice of Request for Remote Hearing (Doc. No. 124) is **DENIED AS MOOT**.

## V. PLAINTIFF'S EMERGENCY MOTION

Alongside the request that this Court expedite its rulings as indicated above, Plaintiff requests in his Emergency Motion that this Court "issue a temporary stay prohibiting the finalization of any adoption proceedings . . . ." (Doc. No. 131 at PageID# 1063). Plaintiff's request and argument as to why the Court should interfere with the state court adoption proceedings are simply regurgitations of his requests and arguments to the Court as it pertains to his request for a preliminary injunction. Therefore, the Court rejects Plaintiff's Emergency Motion as to this request, and Plaintiff's Emergency Motion (Doc. No. 131) is **DENIED IN PART**.

## VI. PLAINTIFF'S MOTION FOR LEAVE TO EXCEED PAGE LIMIT FOR REPLY

Because Plaintiff's Motion to Lift Stay (Doc. No. 108) and Plaintiff's Motion for Emergency Temporary Restraining Order and Preliminary Injunction (Doc. No. 110) are hereby denied, Plaintiff's Motion for Leave (Doc. No. 126) accordingly is **DENIED AS MOOT**.

This action will remain stayed until resolution of the related ongoing appellate case and the potential appeal process to the Tennessee Supreme Court.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE